IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SANDRA LAYNE, an Individual,**
d/b/a/ Eyecatcher,

                **Plaintiff,**

v.                                                                                                    No. CIV 04-181 RLP/LFG

**NORITSU AMERICA CORPORATION,**
a California Corporation,

                **Defendant.**

**MEMORANDUM OPINION AND ORDER**

**Introduction**

THIS MATTER is before the Court[1] on Defendant Noritsu America Corporation's ("Noritsu's") Motion to Stay Litigation, Compel Arbitration, and/or Transfer, filed February 23, 2004. [Doc. No. 2.] The motion is fully briefed and ready for resolution. [Doc. Nos. 4, 5, 6, 7.] After careful consideration of the pleadings, attachments and pertinent law, the Court determines that Noritsu's motion should be granted in part and denied in part, with the result that the case is transferred to the United States District Court for the Central District of California. The Court's reasoning follows.

---

[1] On September 9, 2004, the parties consented to the exercise of jurisdiction over this case by the undersigned United States Magistrate Judge. [Doc. No. 8.]

1

**Background**

Plaintiff Sandra Layne ("Ms. Layne") is a resident of the State of New Mexico and apparently the sole proprietor of an Albuquerque business called Eyecatcher. *See* Complaint for Breach of Contract, Misrepresentation, Fraud, Bad Faith and Unfair Trade Practices. [Complaint at ¶¶ 1, 13; Ex. A to Noritsu's Motion.] On January 21, 2004, Ms. Layne filed her Complaint in the Second Judicial District in the State of New Mexico against Noritsu, a California corporation. Ms. Layne's Complaint sets out four causes of action: breach of contract; fraud and bad faith; misrepresentation; and unfair trade practices. [Complaint, Counts 1-4.] The claims all concern a Noritsu 2301 Printer-Paper Processor purchased from Noritsu America by Ms. Layne for use by her company in New Mexico. Ms. Layne and Noritsu entered into a sales agreement for the printer processor, signed August 7, 2002. Ms. Layne alleges that she suffered damages due to defects or failures in the printer processor.

On February 19, 2004, Noritsu removed this case to federal court in the District of New Mexico, based on diversity jurisdiction. In lieu of filing an Answer, Noritsu filed this Motion.

**Motion to Stay Litigation, Compel Arbitration and/or Transfer Case**

Noritsu asserts that a Conditional Sale Contract that Ms. Layne entered into with it requires that all matters related to the purchase of the printer processor be arbitrated and that arbitration should occur "in the city nearest the principal offices of Seller, or of any Transferee, having AAA [American Arbitration Association] regional officers." [Ex. A to Noritsu's Motion, p. 1 and ¶ 14]. Because Noritsu is headquartered in California, it argues that this Court should stay the litigation here while compelling arbitration in California. Alternatively, Noritsu requests that the proceedings be

transferred, under 28 U.S.C. 1404(a), to the federal district court in the Central District of California[2] if this Court determines it does not have the authority to compel arbitration in California.

The Conditional Sale Contract is a four-page document setting out the parties as Buyer, Sandra C. Layne, and Seller, Noritsu America Corporation. Noritsu's address in Buena Park, California is found at the top of the contract. [Noritsu's Motion, Ex. A.] The items being purchased are described and the payment terms are spelled out on the first page of the contract. Also, on the first page is a paragraph that begins with the heading: **AGREEMENT TO BUY**. Under that paragraph, the following language is set forth: "The parties agree this Sale Agreement constitutes their entire agreement with respect to the subject matters covered and includes an obligation to arbitrate any dispute arising hereunder." Under this paragraph, it states in bold capitalized typeface that "**BUYER ACKNOWLEDGES HAVING READ THE TERMS AND CONDITIONS OF THIS SALE AGREEMENT**." In addition, below the bold print is another line stating in capital letters that "BUYER CONFIRMS HAVING READ THE ABOVE PARAGRAPH.[3]" Ms. Layne's initials follow that line and her signature is also found on page 1 of the Conditional Sale Agreement. [Ex. A.]

The remaining three pages of the Conditional Sale Agreement are entitled "Terms and Conditions." The agreement includes paragraphs addressing authorization to adjust installment payments, payment of time sale price, equipment delivery and acceptance, late fees, buyer's obligations, security interest and collateral, indemnity, taxes, disclaimer of warranties and limitation

---

[2]Noritsu states that its principal offices are in Buena Park, California, and that the AAA has three regional offices in California, with Los Angeles being the closest to Buena Park. [Noritsu's Motion, p. 11, n. 3.]

[3]This line, while capitalized, was not in bold print.

of liability, representations and warranties, further assurances, default, remedies, arbitration, notices, use, maintenance and repairs, loss or damage, insurance, guarantee, assignment, financing statements and enforceability of the agreement.

The arbitration clause in the Conditional Sale Agreement states:

> Any controversy or claim arising out of or related to this Sale Agreement, or Default hereunder, shall be settled by arbitration. The arbitration shall be administered by the American Arbitration Association ("AAA") (or successor or similar organization if the AAA ceases ongoing operations) in accordance with its Commercial Arbitration Rules, including large complex dispute procedures if applicable, in the city nearest principal offices of Seller, or of any Transferee, having AAA regional offices. The arbitration shall be before a single arbitrator selected in accordance with AAA procedures. The arbitration award shall be in writing and shall specify the factual and legal bases for the award. Judgment on the arbitration award may be entered in any court having jurisdiction thereof.

[Ex. A, ¶ 14.]

Ms. Layne agrees that there is an arbitration clause in the Conditional Sale Contract. However, she contends that the separate Sales Agreement, that does not contain an arbitration clause, should control this issue. Even if the Conditional Sale Contract is considered by this Court, Ms. Layne argues that the conditional contract is between her and Noritsu Finance, a separate company and that this separate contract pertains solely to financing arrangements.[4] Thus, according to Ms. Layne, at most, only issues regarding the financing of the purchase could proceed to arbitration. Ms. Layne also asserts that the Conditional Sale Contract is a contract of adhesion and that to enforce the arbitration provision would be unfair and unconscionable, at least with respect to any location in

---

[4]According to Noritsu, the contract was later assigned to Noritsu Financing, but initially entered into by Ms. Layne and Defendant.

California. Finally, Ms. Layne states that should this Court be inclined to compel arbitration, any such arbitration should take place in New Mexico.

The Sales Agreement, upon which Ms. Layne relies appears to consist of three pages. [Ms. Layne's Response, Ex. 1.] At the top of the Sales Agreement, Noritsu's corporate office is listed as being in Buena Park, California. The remainder of the document looks like a typical invoice, setting forth the items being purchased, costs and taxes. Another page, that also looks like an invoice, contains Ms. Layne's signature and a date of August 7, 2002. [Ex. 1.] An additional page, which may be the back page of the invoice, is entitled "Terms and Conditions". It consists of a single page that contains 10 paragraphs, including shipment and installation, payment, warranty, alterations, trade names and representations, patent and copyright infringement, limitation of liability, training, general provisions, sales and use taxes. Neither this page, nor the invoice pages, contain an arbitration clause.

According to Ms. Layne, the Sales Agreement, Conditional Sale Contract and several other documents were all "issued" by Noritsu on August 2, 2002. In her Complaint, Ms. Layne alleges that the Sales Agreement which she characterized as a Contract, "included, as one of its essential terms, financing of the purchase through Noritsu Finance." [Complaint, at ¶ 10.]

## Analysis

**I.     Arbitration**

It is well settled that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. manifests a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/ Johnson Lane Corp., 500 U.S. 20, 25 (1991) (internal citation omitted). The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Tenth Circuit similarly observes the

strong federal policy favoring arbitration and notes that all doubts must be resolved in favor of arbitration. McWilliams v. Logicon, Inc., 143 F.3d 573, 576 (10th Cir. 1998); Dumais v. American Golf Corp., 150 F. Supp. 2d 1182, 1190 (D.N.M. 2001), *aff'd*, 299 F.3d 1216 (10th Cir. 2002). The party resisting arbitration bears the burden of demonstrating the claims at issue are unsuitable for arbitration. Gilmer, 500 U.S. at 26.

In determining whether to order a matter to arbitration, the Court employs a two-part inquiry. The Court first assesses whether a valid agreement to arbitrate exists between the parties. Dumais, 150 F. Supp. 2d at 1190. Next, the Court evaluates whether the specific dispute or claims fall within the scope of the valid agreement. Dumais v. American Golf Corp., 299 F.3d at 1219-20. If the Court answers both inquiries in the affirmative, the matter must be ordered to arbitration. The FAA leaves no place for the exercise of discretion by a district court under such circumstances, and instead mandates that the court stay judicial proceedings while the parties proceed to arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The Court first rejects Ms. Layne's argument that the Conditional Sale Agreement, including the arbitration clause, must be narrowly read to encompass only claims regarding financing or payment issues. A somewhat similar argument was made by the plaintiff in National American Insurance Co. ("NAICO") v. SCOR Reinsurance Co., 362 F.3d 1288 (10th Cir. 2004). In that case, NAICO, like Ms. Layne, did not dispute that there was an arbitration clause. In NAICO, that clause was contained in a Treaty or reinsurance agreement. Id. at 1290. NAICO argued, however, that the Treaty's arbitration clause was not invoked because its claims were independent of the Treaty's provisions and arose solely out of a co-surety obligation set forth in the Hold Harmless Agreement. The Hold Harmless Agreement, like the Sales Agreement in this case, did not contain an arbitration

clause. Id. at 1290, 1292. The Tenth Circuit disagreed with the plaintiff and required the proceedings to be arbitrated. Id. at 1292.

In NAICO, the Tenth Circuit reasoned, in part, that the two documents both related to the same subject matter. Id. at 1291. In addition, the Tenth Circuit observed "that when two agreements are at issue, one with an arbitration clause and one without, the fact that one agreement references the other supports arbitrating claims arising from either agreement." Id. "We have rejected the notion that disputes arising out of an agreement that lacks an arbitration clause are *ipso facto* not subject to the arbitration clause of a related contract." Id. at 1292.

Here, upon a review of both the Conditional Sale Contract and the Sales Agreement, there appears to be some overlap between the two documents. Both discuss terms and conditions regarding shipment, payment, warranties and limitation of liability. In addition, both documents were sent to Ms. Layne at the same time as part of a package of documents for her review. [Plaintiff's Response, Ex. 3A.] The Sales Agreement references the financing terms in the sense that it states Noritsu "will not ship the Equipment until satisfactory financing arrangements have been made." Moreover, Ms. Layne expressly alleges in her Complaint that the Sales Agreement, included, as one of its essential terms, financing of the purchase.

Under the circumstances of this case, there is an interrelation of the two documents, even if they were prepared as separate documents. The two individual agreements or contracts are "integral and interrelated parts of one deal" – the sale and purchase of the printer processor. *See* NAICO, 362 F.3d at 1291. They were sent to Ms. Layne at the same time, involved the same parties and were executed on the same date. They both related to the purchase of equipment that Ms. Layne alleges was defective. The Court concludes here that not only are the agreements related to each other, they

are essential to each other. *See also* First Nat'l Bank v. Chase, 118 N.M. 783, 785 (1994) (holding that the obligation to pay for a product is a fundamental part of the contract for sale); Home & Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C., 2003-NMCA-070, ¶ 18, 133 N.M. 733 (instruments executed at the same time by the same parties and for the same purpose, in the course of the same transaction should be read and construed together); Neal v. Hardee's Food Systems, Inc., 918 F. 2d 34, 37, 38 (5th Cir. 1990) (same).

In addition, the express and broad language of the arbitration clause that "any controversy or claim arising out of or related to this Sale Agreement" is subject to mandatory arbitration should be construed to relate to the entire sales transaction. Ms. Layne's allegations that Noritsu failed to correct defects of the product, breached its warranties, had not fully reconditioned the printer-processor, recklessly sold a defective product, misrepresented what the product was capable of, and made false representations about the product [*see* Complaint] all arise out of a single sales transaction, which includes both the purchase and financing of this product.

Therefore, while this Court does not determine the arbitrability of the claims and leaves that question for the court to which this case is being transferred (*see* discussion *infra*), it does decide that there was a valid arbitration agreement between the parties as set forth in the Conditional Sale Agreement. The transferee court will decide the actual scope of that arbitration clause and whether to compel arbitration.

**II.    Transfer**

A court may transfer an action "[f]or the convenience of parties and witnesses" and "in the interest of justice . . . ." 28 U.S.C. 1404(a). The party moving for transfer bears the burden of demonstrating that the case should be transferred. Bank of Commerce & Trust Co. v. Aichholz, 2003

WL 22738540 at *3 (D. Kan. Nov. 18, 2003) (citing Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991)).

"The Tenth Circuit has not decided how a district court should proceed when a suit pending before it involves an arbitration agreement which specifies that arbitration should take place outside of the court's district." Roe v. Gray, 165 F. Supp. 2d 1164, 1169 (D. Colo. 2001). The Colorado District Court set forth three possible scenarios:[5]

> First, the district court could compel arbitration outside of its district. Dupuy-Busching General Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275 (5th Cir. 1975) . . . . Second, the district court could compel arbitration in its district and simply ignore the contractually specified location. *See* Textile Unlimited, Inc. v. A. BMH & Co., Inc., 240 F.3d 781, 783 (9th Cir. 2001). . . . Or, third, the district court could simply lack the power to compel arbitration in any district. In that event, therefore, the court should either transfer the action to another district or stay the proceedings pending resolution of the arbitration decision in the other district. (internal citation omitted).

Id. The majority view, according to the Colorado District Court, is that only the district court in the designated forum can issue an order compelling arbitration when an arbitration agreement contains a forum selection clause. Id. at 1171.

That Court also noted that:

> The right and duty to arbitrate disputes is purely a matter of contractual agreement between the parties. An arbitration agreement, including its forum selection clause, is a freely negotiated contract between the parties. Courts must give effect to such forum selection clauses.

---

[5]The difference in opinions by various courts probably results in the actual provisions of § 4 of the FAA. The Fifth Circuit, in Dupuy-Busching General Agency noted that there is a conflict between the § 4 provision as to ordering arbitration "in accordance with the terms of the contract," while having the proceedings take place in "the district in which the petition is filed." 524 F.2d at 1277.

Id. at 1173. The Colorado District Court concluded that only the district court in the forum selected by the parties could issue an order compelling arbitration. Id. Thus, the Court determined that the Eastern District of North Carolina should decide the issue of whether to grant the motion to compel arbitration, along with the related issue of arbitrability. Id.

In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995), the court observed that the Seventh Circuit Court of Appeals also has concluded that only the district court in the forum designated by a forum selection clause can issue a § 4 order compelling arbitration. "Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." Id. (internal citation omitted). Section 4 of the FAA precludes a district court from ordering arbitration to take place in an outside district and "just as clearly preclude[s] the court from ordering arbitration to take place within its district in contravention of a freely negotiated forum selection clause." Id. To permit otherwise,

> any party to an arbitration could avoid the effect of the agreed-to forum merely by filing suit in a different district. This in turn could lead to the parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations. This disregard is not what Congress intended when it enacted a statute to make arbitration agreements enforceable. Thus, the district court in this case had no power under the statute to order arbitration in its district in contravention of the parties' agreement.

Id. at 328 (internal citation omitted).

It is true that there is a presumption in favor of a plaintiff's choice of forum, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); however, a federal court may consider a forum selection clause in ruling on a motion to transfer, Stewart Organization v. Ricoh Corp., 487 U.S. 22, 31 (1988). This is especially true here where Ms. Layne initialed and signed the agreement containing the arbitration

language, arbitration clause and forum selection provision. In addition, the liberal federal policy favoring arbitration agreements supports such a conclusion.

Other factors a court should consider in deciding whether to transfer a case are the accessibility of witnesses, enforceability of the judgment, advantages and obstacles to a fair trial, docket congestion, advantages of a local court determining local law, and any considerations of a practical nature making the trial expeditious and economical. Aichholz, 2003 WL 22738540 at *3 (*citing* Chrysler Credit Corp., 928 F.2d at 1516).

Ms. Layne asserts that the majority of witnesses are from New Mexico and Colorado. [Plaintiff's Response, Ex. 3.] However, the Court is not convinced that either forum is intrinsically more convenient than the other, because it is likely that Noritsu will have witnesses from its corporate headquarters as well. In addition, the Court does not find that any of the other factors to be considered strongly favor retaining this case in this District. Because the Court is transferring the case to the federal district court in California, that court will gain knowledge of the facts and law in answering the arbitrability question. Therefore, this Court concludes that it would promote the interests of justice to transfer the case so that a single forum will decide all issues related to this matter. *See id.* at *4. *See also* Spoleta v. Lone Star Steakhouse & Saloon, No. CIV 98-1292 BB/JHG [Doc. No. 21 - Memorandum Opinion and Order] (D.N.M. 4/27/99) (holding that transfer was appropriate because District of New Mexico federal court could not compel arbitration when arbitration clause included a forum-selection provision); Federated Rural Electric Ins. Co. v. Nationwide Mutual Ins. Co., 874 F. Supp. 1204, 1209-10 (D. Kan. 1995) (deciding that the interests of justice were best served by transferring the case to the court that would determine arbitrability).

11

**III.   Adhesion Contract or Unconscionable Contract**

Ms. Layne also argues that even if the Court considers the arbitration clause it should not be enforced because it is an adhesion contract and/or unconscionable.  In support of her position, she cites the Uniform Arbitration Act, 9 U.S.C. § 2, providing that an arbitration provision will be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract."

Ms. Layne asserts that requiring her to travel to California would be burdensome, if not unconscionable.  She explains that her business is very small and has only one employee in addition to herself.  Her business is struggling financially as well, and she cannot take time off work to travel to California.  She has no contacts in California and would be forced to hire an attorney there. [Plaintiff's Response, Ex. 3.]

Ms. Layne contends that the arbitration clause is also an adhesion contract and that it is completely one-sided.  She claims further that the agreements contain standardized language, that she did not have a meaningful choice as to the contract terms, and that there is a clear difference in bargaining power between a small business owner like herself and a multinational company like Noritsu.

In support of Ms. Layne's position, she cites Guthmann v. La Vida Llena, 103 N.M. 506, 510 (1985). However, in Guthmann, the New Mexico Supreme Court explained that an adhesion contract required a finding that the "weaker party virtually [could not] avoid doing business under the particular contract terms" and that the "contract must be offered to the weaker party on a take-it-or-leave-it basis, without opportunity for bargaining."  Id.   Here, there is no evidence that Ms. Layne could not have purchased a printer processor from another company or that Noritsu had a monopoly over the pertinent market.  *See id.*   Moreover, Ms. Layne has not demonstrated a lack of opportunity

12

to bargain for the items she purchased.  *See* Smith Barney, Inc. v. Harridge, 201 F.3d 449 (Table, Text in Westlaw), 1999 WL 1188856 (10th Cir. 1999) (noting that arbitration agreements are not adhesion contracts, not inherently unconscionable and also that the mere fact that the contract language is boilerplate will not render it without effect).  The Court concludes that the purchase agreements in this case were not adhesion contracts.

Similarly, the Court rejects Ms. Layne's argument that the agreements were unconscionable. The case cited by Ms. Layne provides that where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party," a contract may be found unconscionable.  Guthmann, 103 N.M. at 510.  "Businessmen . . . are not ordinarily victims of the kinds of gross advantage-taking that constitute unconscionability." Id. at 511.  Here, there is no demonstration that Ms. Layne, a businesswoman, could not understand the contract terms, that the terms were grossly unfair, or that the terms were unreasonably favorable to Noritsu.  It is true that the forum selection provision in the arbitration clause could have been stated more clearly, and yet, all of the documentation given to and signed by Ms. Layne showed that Noritsu's headquarters were in California.

## **Conclusion**

For the reasons stated above the Court denies Noritsu's motion to stay and motion to compel arbitration but it grants the motion to transfer.  Accordingly, this case will be transferred to the United States District Court for the Central District of California for it to decide the issue of arbitrability and issue the order to compel arbitration, if determined appropriate.  The Court rejects Ms. Layne's arguments that the sales and financing agreements are adhesion contracts or unconscionable, and also denies her request to order arbitration in the State of New Mexico.

IT IS THEREFORE ORDERED that Defendant Noritsu's Motion to Stay Litigation, Compel Arbitration, and/or Transfer [Doc. No. 2] is DENIED as to its request to stay the case or to compel arbitration and GRANTED as to the request to transfer the case.

IT IS FURTHER ORDERED that the clerk shall transmit the court file along with a copy of this Memorandum Opinion and Order to the United States District Court for the Central District of California, in accordance with 28 U.S.C. § 1404(a).

Richard L. Puglisi<br>
United States Magistrate Judge<br>
(sitting by designation)